UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: TYLENOL (ACETAMINOPHEN) MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION<br><br>*THIS DOCUMENT RELATES TO ALL CASES* | CIVIL ACTION<br><br>14-mc-00072<br><br>Related to MDL NO. 2436<br>2:13-md-02436<br><br>HON. LAWRENCE F. STENGEL |

**M E M O R A N D U M**

**Stengel, J.**                                                                                                          **July 1, 2014**

As part of the Tylenol Multi-District Litigation (MDL), the Plaintiffs Steering Committee (PSC) seeks to depose W. Anthony Vernon, a former President of Defendant McNeil. He is not a party to this litigation. Mr. Vernon has moved to quash the subpoena to compel his deposition or, in the alternative, to modify the subpoena to make it less burdensome. For the reasons stated below, I will deny Mr. Vernon's motion in its entirety.

I.     PROCEDURAL BACKGROUND

On February 4, 2014, the Plaintiffs served W. Anthony Vernon, a former President of Defendant McNeil and non-party to this litigation, with a subpoena to compel his deposition on March 4, 2014. Vernon was served in Illinois, where he currently resides; the deposition was scheduled to take place at a location near where he lives and works. The subpoena also requested that Vernon produce certain documents that he may possess

1

related to the litigation. On February 29, 2014, Vernon filed a motion to quash the subpoena or for a protective order in the Northern District of Illinois, pursuant to Federal Rules of Civil Procedure 26 and 45. The PSC then filed a motion to transfer venue to this district, which Vernon did not oppose. The motion to quash was transferred to the Eastern District of Pennsylvania on March 17, 2014.

Subsequently, the PSC filed a response in opposition to the motion and then submitted additional documents *in camera* per my Order. On April 16, 2014, I held a telephone conference on-the-record with counsel for the PSC, counsel for Mr. Vernon, and counsel for Defendants McNeil and Johnson & Johnson to discuss the motion.

## II.   VERNON'S EMPLOYMENT AT MCNEIL/JOHNSON & JOHNSON

Vernon was employed at various Johnson & Johnson companies from 1982 until 2006. From 1982 to 1995, Vernon worked in various managerial roles in McNeil's marketing department; his positions during this timeframe involved marketing for Tylenol Sinus, Tylenol Cold, and adult single-ingredient products.[1] In June 1984, he became a Product Director.[2] In 1988, he was promoted to Group Product Director, overseeing multiple brands and supervising several Product Directors.[3] In 1990, he became Director of Product Management and supervised the Group Product Directors for all of McNeil's consumer products.[4]

---

[1] See Vernon Declaration, Doc. No. 1, Ex. B at ¶ 9.

[2] See id. at ¶ 10.

[3] See id.

[4] See id.

2

From March 1995 until December 1998, he left McNeil to work in another Johnson & Johnson company. From December 1998 until April 2001, Vernon came back to McNeil to serve as President of McNeil Consumer Healthcare. Thereafter, Vernon served in executive positions at other Johnson & Johnson companies before leaving Johnson & Johnson all together in 2006.

## III.   DISCUSSION

Vernon asserts that "he has limited, if any, information relevant to Plaintiffs' claims" because he has not worked for McNeil since 2001, has not worked in McNeil's marketing department since 1995, and was not responsible for directions or labels for Tylenol products. Because the majority of claims in this action involve Plaintiffs' ingestion of Tylenol after Mr. Vernon's time at McNeil, Mr. Vernon argues that any knowledge he might have about his time at McNeil would not be relevant to the claims asserted in this case. He also argues that the "apex doctrine" applies and that the deposition imposes an "undue burden."

"Courts have significant discretion when resolving discovery disputes." Reif v. CNA, 248 F.R.D. 448, 451 (E.D. Pa. 2008) (citing Gallas v. Supreme Court of Pa., 211 F.3d 760, 778 (3d Cir. 2000)(stating a trial court's discovery ruling will only be disturbed if "the court's action made it impossible to obtain crucial evidence, and implicit in such a showing is proof that more diligent discovery was impossible")). "It is rare for a court to issue a protective order that prohibits a deposition." U.S. v. Mariani, 178 F.R.D. 447, 449

(M.D. Pa. 1998)(citations omitted).[5] The party moving to quash the subpoena has a heavy burden of persuasion. Id. Overall, a court "must balance the non-moving party's interest in obtaining discovery and preparing for trial against the moving party's proffer of harm that would result from the deposition." Adelphia Recovery Trust v. Bank of America, N.A., No. 4:09–MC–00139, 2009 WL 1794992, at *1 (M.D. Pa. Jun. 23, 2009)(citations omitted).

    a. **Relevance of Vernon's Deposition**

As a threshold matter, Mr. Vernon argues that his deposition is not relevant to the litigation at hand. He claims that "[e]ven during his early years at McNeil, as he was promoted within the marketing department, [he] became more focused on high-level strategy such as profit and loss and authoring business plans" and that he never had direct responsibility for warnings or labels on Tylenol products. According to Mr. Vernon, decisions about warnings and labels were made by a "review committee," which included representatives from the regulatory group, medical group, and legal department at McNeil. Mr. Vernon asks me to believe that because he was not a member of the committee, he doesn't have any knowledge about warnings or labels that would be relevant to this case. In Mr. Vernon's view, because he doesn't know anything relevant to the claims or defenses in this case, I should quash the subpoena under Federal Rule of Civil Procedure 26.[6]

---

[5] See, e.g., Elsevier, Inc. v. Comprehensive Microfilm & Scanning Servs., Inc., No. 3:10–CV–02513, 2013 WL 5797639, at *3 (M.D. Pa. Oct. 28, 2013)("The federal courts clearly favor the taking of depositions and will prohibit their use only on a heightened showing of good cause."); Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979).

[6] Federal Rule of Civil Procedure 26 states:

Information is discoverable if it is relevant to the issues in the case or if it is "reasonably calculated to lead to discovery of admissible evidence." FED. R. CIV. P. 26(b)(1).  I have already ruled in this case that information about the efforts and strategies to market Tylenol prior to when the Plaintiffs ingested it is relevant to the Plaintiffs' claims.[7] For many years, the defendants sold Tylenol as the safest, most effective pain reliever on the market, building a trusted household brand. The Plaintiffs contend that this "branding" was not consistent with the drug's risks. Because Mr. Vernon was a marketing manager for Tylenol products, his testimony is clearly relevant to the claims and defenses in this case.

b. The So-Called Apex Doctrine

Mr. Vernon argues that because he was a high-ranking executive while at McNeil he need not testify in a deposition under the so-called "apex doctrine."  Federal courts have the ability to prohibit the depositions of high-level executives in cases where the executive has no firsthand knowledge of the facts, under a theory which has come to be

---

DISCOVERY SCOPE AND LIMITS. (1) *Scope in General*. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

FED. R. CIV. P. 26(b)(1).

[7] See Tylenol MDL, 13-md-2436, Order Denying Defendants' Motion to Quash Marketing Deposition Notice for Lack of Relevance, Doc. No. 139, and Transcript of March 18, 2014 Monthly Status Conference, Doc. No. 140.

known as the "apex doctrine."[8] This doctrine relates to the Rule 26 mandate for courts to limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C).[9] "Depositions of high level corporate executives may be duplicative, cumulative and burdensome where the person sought to be deposed has no personal knowledge of the events in dispute." Harris v. Computer Assocs. Int'l., Inc., 204 F.R.D. 44, 46 (E.D.N.Y. 2001). Simply stated, the apex doctrine applies when those at the top of the company, i.e. men and women at the "apex," really don't have personal knowledge about what is going on with the product, or its marketing, or its financing or really anything else that might be of interest to the plaintiffs, or the attorneys, or the jury, or the court.

---

[8] See, e.g., Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979) (affirming grant of protective order to bar deposition of Upjohn's President, when the plaintiff planned to depose employees of the corporation with more first-hand knowledge related to the issues in the case); Roman v. Cumberland Ins. Grp., No. 07-CV-1201, 2007 WL 4893479, at *1 (E.D. Pa. Oct. 26, 2007)(preventing deposition of high-ranking officials because lower-ranking employee with firsthand knowledge was available for deposition); Piontek v. I.C. Sys., No. 1:08–1207, 2008 WL 7674787, at *1  (M.D. Pa. Oct. 22, 2008)(prohibiting the deposition of CEO when two other employees with superior knowledge were available to be deposed); Taggart v. Wells Fargo Home Mortg., Inc., No. 10-cv-00843, 2012 WL 4462633, at *3 (E.D. Pa. Sept. 27, 2012)(Stengel, J.)(granting motion for protective order to prevent deposition of former vice president of defendant corporation who had no first-hand knowledge of plaintiff's mortgage and individual with such knowledge was already deposed).

The Third Circuit has not yet set forth an analytical framework on when use of the apex doctrine is appropriate. See Ford Motor Co. v. Edgewood Properties, Inc., No. 06–1278, 2011 WL 677331, at *2 (D.N.J. Feb. 15, 2011); Reif v. CNA, 248 F.R.D. 448, 451 (E.D. Pa. 2008).

[9] It is also in line with the Advisory Committee's Notes on Federal Rule of Civil Procedure 45(c)(3)(A)(iv) which state:
> Clause (c)(3)(A)(iv) requires the court to protect all persons from undue burden imposed by the use of the subpoena power. Illustratively, it might be unduly burdensome to compel an adversary to attend trial as a witness if the adversary is known to have no personal knowledge of matters in dispute, especially so if the adversary would be required to incur substantial travel burdens.

FED. R. CIV. P. 45, Advisory Committee's Notes, 1991 Amendment.

Courts in this circuit consider two factors when deciding if the deposition of a high-ranking corporate officer or executive is appropriate: 1) whether the executive has personal, superior, or unique knowledge on the relevant subject; and 2) whether the information can be obtained in a less burdensome way, such as through lower-level employees or other discovery methods. See, e.g., Ford Motor Co. v. Edgewood Properties, Inc., No. 06–1278, 2011 WL 677331, at *2 (D.N.J. Feb. 15, 2011); Reif v. CNA, 248 F.R.D. 448, 451 (E.D. Pa. 2008).

On April 1, 2014, I ordered the PSC to submit documents they have received during discovery which they believe tend to show Vernon's personal involvement in the day-to-day decision-making about Tylenol products and which would be relevant to the issues in this litigation.[10] I reviewed these documents *in camera*. These documents, which have been produced by the defendants during discovery, show very clearly that Vernon was actively involved in decision making regarding the marketing and product development of Tylenol products while working both as a marketing manager and later as President of McNeil.[11] They also indicate that Vernon has knowledge that is unique to him and which could not be obtained through the depositions of those other McNeil

---

[10] These documents showed, among other things, that Vernon was involved with: efforts to develop an acetaminophen product without hepatotoxic properties, interactions with European authorities when they began to question the safety of acetaminophen, and interactions with European companies when they began to implement different packaging methods for acetaminophen. See Doc. No. 6; Doc. No. 5 at 8 n. 14. The PSC requested that these documents be submitted *in camera* in order to protect their work product and deposition strategy.

[11] See Otsuka Pharm. Co., Ltd. v. Apotex Corp., No. 07-1000(MLC), 2008 WL 4424812, at *5 (D.N.J. Sept. 25, 2008)(denying a motion for protective order regarding an executive's deposition because executive possessed "unique knowledge" related to litigation claims).

7

employees not quite at the "apex."[12] I find that the apex doctrine does not preclude Mr. Vernon's deposition.[13]

### c. Undue Burden on a Non-party

Mr. Vernon argues that he should not be deposed because he is not a party in this case and is entitled to more protection from "unduly burdensome discovery." "Discovery should be more limited to protect nonparty deponents from harassment, inconvenience or disclosure of confidential documents." Northeast Women's Ctr., Inc. v. Mc Monagle, Civ. A. No. 85–4845, 1987 WL 6665, at *5 (E.D. Pa. Feb.10, 1987) (citing Dart Indus. Co. v. Westwood Chem. Co., 649 F.2d 646, 649 (9th Cir.1980)).[14] A court may quash a subpoena under Federal Rule of Civil Procedure 45 that amounts to an "undue burden." FED. R. CIV. P. 45(d)(3)(A)(iv).

---

[12] Mr. Vernon was involved in marketing during a highly relevant time period—one which preceded the time of Ashley McEvoy, who was already deposed in this case, and of Colleen Goggins, who I already ruled should be deposed in this case. See Tylenol MDL, 13-md-2436, Order Permitting Deposition of Colleen Goggins, Doc. No. 122. During Ashley McEvoy's deposition, she stated that she could not speak to certain subjects because they were before her time as a McNeil executive.

Vernon also argues that transcripts from prior depositions from 1994 to 2008, which are available to the Plaintiffs, should be a sufficient substitute for a deposition in this case. I do not find this argument persuasive. As had been noted previously in this case, the claims in this Tylenol MDL differ from other products liability claims previously asserted against the defendants. The depositions Mr. Vernon underwent previously would not necessarily speak to claims in this case for that reason.

[13] In addition, I am not persuaded that those persons to be deposed for the Rule 30(b)(6) Marketing Notice will have the same knowledge which Mr. Vernon has regarding the issues in this case, as shown by the documents presented in camera. See Tylenol MDL, 13-md-2436, Doc. No. 139. See also Bank of the Ozarks v. Capital Mortg. Corp., No. 4:12–mc–00021, 2012 WL 2930479, at *2 (E.D. Ark. Jul. 18, 2012)(quashing subpoena for corporate deposition when no showing that executive had unique knowledge had been made). I will note that the Third Circuit has not adopted the wait-and-see approach discussed in Ozarks.

[14] See, e.g., In re Fosamax Products Liability Litigation, No. 1:06–MD–1789 (JFK)(JCF), 2009 WL 2395899, at *3 (S.D.N.Y. Aug. 4, 2009)("In general, third parties are afforded more sympathy in weighing the burden of discovery because they have no personal stake in the litigation."); Symetra Life Ins. Co. v. Rapid Settlements, Ltd., No. 07–133, 2008 WL 597711, at *2 (E.D. Pa. Mar. 4, 2008)(explaining how subpoena's recipient's status as a nonparty is a factor to consider under Rule 45(c)(3)(A)(iv)).

Mr. Vernon is currently the President, Chief Executive Officer, and a Director of Kraft Foods Group, Inc. He argues that he is unable to appear for a deposition. Beyond his busy work schedule, he offers no other reason for preferring not to appear for a deposition. I find his argument unpersuasive. Having to answer questions about the twenty or so years he worked for the defendants hardly seems like an "undue burden." He was in a high level managerial position within McNeil and Johnson & Johnson with responsibilities that appear directly relevant to the issues in this case.[15]

Since November 2013, the PSC has attempted to coordinate with Vernon's counsel to find a convenient time for his deposition.[16] The PSC has already agreed to take the deposition in Illinois and to schedule it at a mutually convenient date.[17] The PSC has met its burden of minimizing inconvenience to Mr. Vernon as a non-party deponent.

### d. Protective Order Request

In the alternative, Vernon requests that the following modifications be made: 1) he be permitted to respond via written questions pursuant to Federal Rule of Civil Procedure 31; or 2) an oral deposition be limited to three hours.[18]

---

[15] See PR Newswire, Kraft Foods Names Tony Vernon President, Kraft Foods North, Former J&J Leader Brings Exceptional CPG, Marketing and Innovation Experience to Role (Press Release Regarding Vernon's Appointment as President of Kraft), Jun. 22, 2012, available at
http://www.bloomberg.com/apps/news?pid=newsarchive&sid=aDUqG0ZWY77A ("At J&J, Vernon ran multibillion-dollar independent business units and led many of that company's largest consumer brands, including Tylenol, Motrin, Pepcid AC, Imodium and Splenda.").

[16] See Doc. No. 6, Ex. A.

[17] The PSC asserts that the March 4, 2014 date was chosen after Vernon's counsel did not respond to the PSC's request for a convenient date. The PSC was willing to depose Vernon in or around March 4, 2014 in Washington, D.C. Vernon, instead, filed this motion to quash.

[18] Vernon also asked that the deposition be rescheduled for a more convenient date. Vernon contested the original date of the deposition because he was scheduled to attend a Kraft Board of Directors meeting on March 4, 2014 in Washington, D.C. The PSC asserts that the March 4, 2014 date was chosen after Vernon's counsel did not respond

The first "modification" would be neither efficient nor productive. Given the highly complex nature of this litigation, it does not seem likely that the PSC would be able to provide Mr. Vernon with written questions which would or could cover the full scope of the information being sought. Allowing the PSC to depose Mr. Vernon in person, to provide the opportunity for follow-up questions, would be a better use of the time and resources of all concerned.

Limiting the deposition to three hours would likely be too constricting. Mr. Vernon worked for the defendants for twenty-four years. For thirteen of those years, Vernon worked at McNeil in marketing Tylenol products. For three of those years, he served as McNeil's President. It appears unlikely that a limit of three hours for both parties to examine Mr. Vernon will be sufficient. See Adelphia Recovery Trust v. Bank of America, N.A., No. 4:09–MC–00139, 2009 WL 1794992, at *2 (M.D. Pa. Jun. 23, 2009)(denying request for limiting third-party deposition of executive with "some knowledge" related to litigation because the complexity of the case called for a lengthy examination).

## IV.  CONCLUSION

For the reasons stated above, I will deny Vernon's motion to quash and compel his deposition to go forward as set out in the subpoena served him on February 4, 2014.[19]

An appropriate Order follows.

---

to the PSC's request for a convenient date. The PSC is willing to depose Vernon at a later date, which works with his schedule. Since the original deposition date has passed, the last request is moot.

[19] In addition, I find no reason why Mr. Vernon should not be required to produce those documents in his "possession, custody, or control" as requested in the subpoena; he has offered no showing of "undue burden" to prevent their production at his deposition. See FED. R. CIV. P. 45(a)(1)(A)(iii). Obviously, he cannot bring documents he does not possess; however, he should comply with this part of the subpoena as well as he is able.